### UNITED STATES DISTRICT COURT
### DISTRICT OF RHODE ISLAND


ANTHONY ZARRO,
      Plaintiff,

      v.                                    C.A. No. 12-38L

HASBRO, INC., as Plan
Administrator, Alias, and
HASBRO, INC., TEAMSTERS
PENSION PLAN, Alias,
      Defendants.


### <u>MEMORANDUM AND ORDER</u>


     This matter is before the Court on the parties' cross
motions for summary judgment on Plaintiff Anthony Zarro's claims
that he has been wrongfully denied pension benefits in violation
of the Employee Retirement Security Act, 29 U.S.C. § 1001 et seq.
("ERISA"). Pursuant to ERISA's  Section 503, 29 U.S.C. § 1133, as
well as the terms of the subject ERISA plan, Defendant Hasbro,
Inc. Teamsters Pension Plan, (hereinafter the "Hasbro Plan"),
Plaintiff has completed two internal appeals of his benefits
denial with the Plan Administrator.  He turns now to this Court
with a claim brought under ERISA Section 502 "to recover benefits
due to him under the terms of his plan." 29 U.S.C. § 1132(1)(B).
For the reasons explained herein, the Court affirms the Plan
Administrator's determination on Plaintiff's pension benefit
calculation, but remands the dispute over the annual Christmas
bonus to the Plan Administrator for further consideration.

## Background

Plaintiff worked as a truckdriver for Defendant Hasbro, Inc., from 1972 until 1999, when the facility where he was employed was shuttered and Plaintiff was terminated.  Throughout his tenure at Hasbro, Plaintiff was a member of a labor union, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 251 ("the Teamsters Union").  When Plaintiff joined the Teamsters Union in 1972, he became a participant in its pension plan, the New England Teamsters & Trucking Industry Pension Fund (the "Teamsters Pension Fund").  In 1989, during the course of collective bargaining between the Teamsters Union and Hasbro, Hasbro withdrew from the Teamsters Pension Fund and established a new pension plan.  In accordance with the new union contract in effect from December 9, 1989 until December 8, 1992 (the "Union Contract"), Plaintiff and his co-workers became participants in the Hasbro Plan on January 1, 1990.

The Preamble to the Hasbro Plan states much of what the Court has just recounted:

> 1.1 <u>History of Plan</u>: Prior to January 1, 1990, Hasbro, Inc. (hereinafter referred to as the "Company") provided retirement income to employees whose employment was covered by a collective bargaining agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, through contributions to the New England Teamsters and Trucking Industry Pension Plan (the "Union Pension Plan").  The

> collective bargaining agreement between the
> Company and the union, dated December 9,
> 1989, provides that the Company will withdraw
> from the New England Teamsters and Trucking
> Industry Pension Plan.  The Company has
> agreed to establish a pension plan for the
> benefit of the union employees with
> substantially the same eligibility and
> benefit schedules (subject to the exceptions
> and modifications thereof set forth in
> Article XX of the Collective Bargaining
> Agreement).

Article XX of the Union Contract asserted that the "Members of the bargaining unit will be entitled to a Pension Plan with the same eligibility and benefit schedules" as the Teamsters Pension Fund, but with four exceptions.  One exception consisted of three amounts (or caps) for regular pension benefits "based upon 25 years of service at age 60."  These caps were $600 for those who retired during the first contract year, $615 for those who retired during the second year, and $625 for the third. Other exceptions concerned the calculation of pension credits for fractional years of service, and the elimination of the "Thirty Year Service Pension."

Plaintiff continued working for Hasbro until 1999 when the trucking facility was closed.  Plaintiff was then forty-eight years old, and had worked for Hasbro for twenty-seven years. Towards the end of 2008, Plaintiff made inquiries to both the Teamsters Pension Fund and the Hasbro Plan about his pension benefits.  The Teamsters Pension Fund responded with an estimated

-3-

statement indicating that Plaintiff had earned pension credits for seventeen years and five months of service (1972-1990), making him eligible, at age sixty-four, for a pension of $642.90 per month.  The letter went on to explain that, "Under the present rules of the plan, you may collect a reduced pension prior to age 64.  For example, you would receive a monthly benefit of $432.93 per month payable at age 58/02."

Plaintiff submitted the Teamsters Pension Fund's estimated statement to Hasbro, which forwarded it to an independent consultant, Watson Wyatt Worldwide.   In May 2009, Plaintiff was notified by Hasbro's vice president for employee benefits that he would be eligible, at age sixty-four, for a Statutory Pension of $468.75 per month. The letter continued,

> However, the benefit from the Hasbro, Inc. Teamsters Pension Plan is offset by your pension benefit from the New England Teamsters & Trucking Industry Pension Fund.  The New England Teamsters has estimated that your monthly benefit at age 64 is $642.90.  Since the benefit from the New England Teamsters is larger than the benefit determined from the Hasbro, Inc. Teamsters Pension Plan; there is no benefit payable from the Hasbro, Inc. Teamsters Pension Plan.

(emphasis added).

On learning that he had worked for Hasbro an additional nine years without accruing any additional pension benefits, Plaintiff solicited the assistance of the Pension Action Center of the Gerontology Institute at the University of Massachusetts, an

-4-

advocacy organization funded by the United States Administration
on Aging.  The Center's managing attorney, Jeanne Medeiros,
contacted Hasbro and requested pertinent information, including a
copy of the Hasbro Plan.

### *Plaintiff's first request for reconsideration*

On March 11, 2011, Medeiros wrote to Dianne Silva, Hasbro's
director of employee benefits, requesting pension benefits on
Plaintiff's behalf.  This initial claim was based on the
erroneous premise that Plaintiff was 59 years old when he
terminated his employment with Hasbro.  Based on this
miscalculation, Medeiros determined that Plaintiff should be
entitled to an Early Retirement Pension, rather than the
Statutory Pension.  Dianne Silva quickly replied, denying the
claim, pointing out the appropriate Plan provisions, and drawing
Medeiros' attention to her error concerning Plaintiff's age.

### *Plaintiff's appeal*

On May 4, 2011, Medeiros sent her next request, identified
as an appeal, to the Plan Administrator.  The appeal retreated
from the previous argument as to the Early Retirement Pension,
but set forth two new bases for Plaintiff's claim for benefits.
The first argument relied on Article XX of the 1989 collective
bargaining agreement, specifically the language quoted above
which stated that the new plan would have the "same eligibility
and benefit schedules" as the former plan.  Medeiros made no

-5-

reference to the pension caps or other exceptions included in Article XX, and wrote,

> Mr. Zarro agrees that his benefit is properly calculated as a Statutory Pension, as he had not attained age 52 when he left this employment in April of 1999.  He further asserts that the clear language of Article XX, quoted above, entitles him to **no less than** the amount he would have earned had he remained a member of the Teamsters plan throughout his employment.

(emphasis in original).  Medeiros cites two pages from the Teamsters Pension Fund summary plan description,[1] as well as a 2011 letter from the Teamsters Pension Fund Manager to Plaintiff which states that Hasbro contributed $0.82 to the Teamsters Pension Fund on his behalf for each hour he worked in 1989. Accordingly, Medeiros calculates that, had Plaintiff remained in the Teamsters Pension Fund from January 1990 through April 1999, he would be eligible for an additional pension amount of $385.45 per month for those years, over and above the amount he was eligible to receive for his first seventeen years of employment.

As the second ground for appeal, Medeiros stated that the Hasbro Plan fails to comply with ERISA's Section 204(b)(1), 29 U.S.C. § 1054(b)(1), because its accrual methodology operates such that Plaintiff worked for nine years without accruing

---

[1] Medeiros' letter identifies the Summary Plan Description as being the 1991 version.  The pages in the Court's record are not legible.

benefits beyond what he had accrued during his first seventeen years of employment.

### *Hasbro's response*

On June 30, 2011, Plaintiff received a denial from Hasbro's Benefits Committee, setting forth four grounds.  First, the Benefits Committee, acting as Plan Administrator (hereinafter "Plan Administrator"), points out that, as a matter of protocol, an appeal must relate directly to the first claim.  Plaintiff conceded in his appeal that he was not eligible for the Early Retirement Pension, which was the only claim raised in his initial letter.  Consequently, his new arguments were improper.

More substantively, the Plan Administrator made two points concerning the Union Contract.  First, the Plan Administrator stated that the terms of the Union Contract were irrelevant to the present dispute:

> The 1989 collective bargaining agreement between Hasbro and Local 251 is a matter of contract between the parties.  Local 251 no longer represents any employees at Hasbro and Local 251 does not represent the retirees under the Plan.  Local 251 could have arbitrated any matter under the contract including any variance or ambiguity between the language of the contract and the Plan document on behalf of Mr. Zarro and other Hasbro employees who were members of Local 251.  Twenty-one years have elapsed since the 1989 contract was signed.  The Committee may reasonably assume that representatives of Local 251 reviewed the plan document 21 years ago and concluded that it set forth the intent of the parties.

Second, the Plan Administrator pointed out that the terms of the
Union Contract, though not binding on the Plan Administrator, are
nonetheless consistent with its position.  To demonstrate this,
the Plan Administrator quoted the Union Contract's Article XX,
including the exceptions omitted by Medeiros.  The three yearly
benefit caps included in the Union Contract are the same benefit
levels provided in the Hasbro Plan; except that, in the Hasbro
Plan, the cap in the third year of the Union Contract is extended
in time to those "who retire on or after December 9, 1991."  The
Plan Administrator concluded, "In as much as the collective
bargaining agreement sets forth the level of benefits to be
provided under the Plan, the claimant's Exhibits that relate to
the Teamsters Pension Plan and the contribution levels after 1989
are not relevant."

As for Medeiros' argument that the Hasbro Plan's accrual
methodology does not comply with statutory requirements, the Plan
Administrator asserted that the Hasbro Plan had been reviewed by
the Internal Revenue Service and received favorable
determinations in 1995 and 2003.  Moreover, the Plan
Administrator stated that the "method of computing the accrual of
benefits and the nature of the offset arrangement for the
Teamsters Plan benefit has not changed since the Hasbro Plan was
adopted in 1989."  Following this denial, Plaintiff obtained the
services of a Rhode Island attorney and filed the present

-8-

complaint.

### *The complaint*

Plaintiff's complaint sounds in four counts.  Count I
asserts that Defendants' failure to provide benefits is a breach
of the Hasbro Plan and a breach of the fiduciary duties imposed
on Defendants by the Plan.  Count II states that Defendants'
failure to comply with the terms of the Hasbro Plan represents a
violation of Defendants' fiduciary duties imposed by ERISA, under
29 U.S.C. § 1109.  In Count III, Plaintiff asserts that
Defendants' refusal to comply with the terms of the Hasbro Plan
is a violation of the fiduciary duties outlined in 29 U.S.C. §
1109, and that Defendants have failed to exercise reasonable care
to manage the assets of the Hasbro Plan.  Finally, Count IV
alleges that Defendants' failure to comply with the Hasbro Plan
was arbitrary, capricious, an abuse of discretion and
demonstrated Defendants' inherent conflict of interest resulting
from its dual role as payor and administrator of the Hasbro Plan.
Plaintiff seeks compensatory damages for all counts.[2]

Defendants have moved for summary judgment on Plaintiff's
complaint.  In their memorandum, Defendants reiterate the
arguments made in the Plan Administrator's denial of Plaintiff's
first appeal.  First, the attorney from the New England Pension

---

[2] Compensatory damages are not available under ERISA which
permits only the recovery of benefits due and "other appropriate
equitable relief."  29 U.S.C. § 1132(a)(1)(B) and (a)(3).

Assistance Project misstated Plaintiff's age.  Second, the Union
Contract is not determinative of Plaintiff's pension award, but,
nonetheless, the pension award is consistent with the Union
Contract.  And, third, the Hasbro Plan complies with ERISA.

Plaintiff has objected to Defendants' motion and
countermoves for summary judgment on his claims.  As before,
Plaintiff's arguments rely on the Hasbro Plan's preamble and
Article XX of the Union Contract, which led him to believe that
his benefits would continue unchanged after Hasbro withdrew from
the Teamsters Pension Fund.  Article XX of the Union Contract,
Plaintiff argues, has been incorporated by reference into the
Hasbro Plan, and therefore its terms are enforceable.

Plaintiff also brings up a new issue: the Christmas bonus.
Pursuant to the Hasbro Plan, Plaintiff asserts that he became
eligible to collect an additional benefit of $400 per year,
commencing Christmas 2010.

Finally, Plaintiff argues that, since the First Circuit's
decision in Denmark v. Liberty Life Assurance Co. of Boston, 566
F.3d 1 (1st Cir. 2009), Defendants must document the procedures
taken to insulate the Plan Administrator from the pressures
caused by the inherent conflict created by the Hasbro's dual
capacity as Plan Administrator and benefits-payor for the Hasbro
Plan.  Plaintiff seeks an opportunity for further discovery to
explore this issue, prior to the Court's making its ruling on

-10-

Defendants' Motion for Summary Judgment.

## Standard of review

The Supreme Court has held that when an ERISA fiduciary exercises discretionary powers in the administration of the plan, then the fiduciary's denial-of-benefits determination will be reversed only if it is found by the Court to be arbitrary and capricious.  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).  Subsequently, the Supreme Court extended the 'arbitrary and capricious' standard of review to claims of breach of fiduciary duty.  Varity Corp. v. Howe, 516 U.S. 489, 514 (1996).  In the present case, it is undisputed that the Hasbro Plan provides the Plan Administrator with the necessary discretionary responsibilities such that the Court must employ this standard.

The arbitrary and capricious standard is described by the Supreme Court as a deferential standard, intended to prevent or rectify an abuse of discretion by the fiduciary.  Id. at 514 - 515.  Judge Smith of this Court wrote,

> Even if the court disagrees with the decision, or if the employee offers a competing reasonable interpretation, the court must not disturb a plan administrator's interpretation if it is reasonable.  The arbitrary and capricious standard is the "least demanding form of judicial review" and requires only that determinations be "rational in light of the plan's provision," as well as reasonable with no abuse of discretion.

Massey v. Stanley-Bostitch, Inc., 255 F. Supp. 2d 7, 11 (D.R.I. 2003) (quoting Coleman v. Metropolitan Life Ins. Co., 919 F. Supp. 573, 581 (D.R.I. 1996)).

In 2008, the Supreme Court issued Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S. Ct. 2343 (2008), which held that, in instances when the plan administrator serves also as the payor of plan benefits, this dual role creates a financial conflict of interest which must be considered by courts when reviewing the plan administrator's denial of benefits. The Supreme Court was clear that any intensified scrutiny of a plan administrator's decision-making process should stop short of a *de novo* review, and underscored that the 'abuse of discretion' standard remained the appropriate standard of review. Id. at 117, 128 S. Ct. at 2351.

In Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3d 1 (1st Cir. 2009), the First Circuit responded to Glenn by explicitly retiring its previous theory that market forces in the insurance industry would offset the effects of a conflict of interest. 566 F.3d at 9; see e.g., Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). Nonetheless, the First Circuit determined that the Glenn Court's directive was "...that judges should weigh a conflict as they would weigh any other pertinent factor; that is, when the relevant considerations are in equipoise, any one factor, including a structural

conflict, may act as a tiebreaker." 566 F.3d at 8. While stating that "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts," id. at 9, the Court also held that discovery into this issue "must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." Id. at 10.

In his concurrence in Glenn, Chief Justice John Roberts complained that the decision "leaves the law more uncertain, more unpredictable than it found it." 554 U.S. at 122, 128 S. Ct. at 2354. Justice Scalia, dissenting, described the majority's approach as "nothing but de novo review in sheep's clothing," id. at 130, 128 S.Ct. at 2358, and concluded, "Common sense confirms that [a] trustee's conflict of interest is irrelevant to determining the substantive reasonableness of his decision. A reasonable decision is reasonable whether or not the person who makes it has a conflict." Id. at 132, 128 S.Ct. at 2360.

The Denmark decision similarly creates uncertainty as to the extent of the trial court's responsibility to inquire about the plan administrator's insulation "against the potentially pernicious effects of structural conflicts." 566 F.3d at 9. This Court holds that, in the present case, no additional evidence is necessary in order for it to make a reasoned ruling.

-13-

The Court will be guided by earlier language in the <u>Denmark</u>
decision, quoted above: "...when the relevant considerations are
in equipoise, any one factor, including a structural conflict,
may act as a tiebreaker."  <u>Id</u>. at 8.

## <u>**Analysis**</u>

### *Which arguments are before the Court?*

Hasbro has moved to strike Plaintiff's memorandum in its
entirety, and urges the Court to disregard Plaintiff's arguments
because they were not raised in his initial claim.  In fact,
Hasbro argues that Plaintiff should be limited to his first
mistaken argument that he was entitled to an Early Retirement
Pension because he was fifty-nine when he stopped working at
Hasbro.  To support this argument, and its motion to strike
Plaintiff's entire memorandum, Hasbro cites the First Circuit's
decision in <u>Liston v. Unum Corp. Officer Severance Plan</u>, 330 F.3d
19 (1st Cir. 2003).  In <u>Liston</u>, the First Circuit stated the
rule, widely followed throughout the country, that the record on
review is usually limited to the record before the plan
administrator.  <u>Id</u>. at 23.

Defendants are correct that Plaintiff's arguments have not
been consistent throughout this process.  However,
notwithstanding his inconsistencies, Plaintiff's first argument,
based on the mistaken age calculation, has obviously been
conceded, and abandoned.  Hasbro is elevating form over substance

-14-

by continuing to address this argument.  Stepping back from
technicalities, it is clear that starting with his appeal to the
Plan Administrator and continuing through the memoranda submitted
to this Court, Plaintiff has made the same basic argument: that,
based on the Union Contract and language in the new Hasbro Plan,
Plaintiff thought he was continuing to earn additional pension
credits during his final nine years of employment, and that he
thinks he is entitled to a bigger pension now.  In his most
recent memorandum, Plaintiff makes a new argument that he is
entitled to an additional retirement benefit, the Christmas
Bonus.  While portions of these arguments may vary, and may have
been expressed differently by Plaintiff's two attorneys, the
arguments boil down to the same task for the Plan Administrator:
to look at the Plan, the Union Contract and Plaintiff's personal
data and make sure that Plaintiff is getting the benefits to
which he is entitled.  Moreover, the rule set forth by the First
Circuit in <u>Liston</u> is not implicated here because, while
Plaintiff's arguments have shifted, the administrative record
remains unchanged.  For these reasons, the Court denies Hasbro's
motion to strike.

The Court will not address Plaintiff's abandoned claim based
on the mistaken age calculation.  In addition, the Court will not
address the argument made by Attorney Medeiros in the appeal that
the Hasbro Plan fails to comply with ERISA's accrual

requirements, as set forth in 29 U.S.C. § 1054.  This argument
was not pursued by Plaintiff's new attorney; it is not included
in his complaint and it has not been alluded to again in his
memoranda.  Consequently, the Court has concluded that this
argument has been dropped by Plaintiff.  The Court will address
Plaintiff's claims concerning the amount of his pension benefits
and whether or not he is eligible for a Christmas bonus.

### *The benefit calculation*

Sadly for Plaintiff, his arguments concerning the Preamble
to the Hasbro Plan and the incorporation of Article XX of the
Union Contract don't add up.  When Hasbro withdrew from the Union
Pension Fund and established the Hasbro Plan, both sides stated
that employee benefits were to remain "substantially the same" or
even "the same" with a few exceptions.  In the arena of labor-
management relations, both sides no doubt had reasons for sugar-
coating what appears from this vantage point to have been a
'take-away.'

However, speculation is inappropriate and unnecessary.  The
Court may only examine the four corners of the Hasbro Plan.  See
Green v. ExxonMobil Corp., 413 F.Supp.2d 103, 112 (D.R.I.
2006)("When misrepresentations are made to employees, those
misrepresentations cannot alter the plan, except to the extent
that they reflect a reasonable interpretation of the plan
language.")  Article V of the Hasbro Plan describes four types of

-16-

pensions: regular pension benefit; reduced pension; early

retirement pension; and statutory pension.  Each section sets

forth a formula for calculating the benefit, and each states that

the amount will be reduced by the amount of the Union Pension

Plan Benefit.  According to Article IV of the Hasbro Plan,

Plaintiff's age when he stopped working for Hasbro, 48, made him

too young to qualify for the regular pension, the reduced pension

or the early retirement pension.  Plaintiff is only eligible for

a Statutory Pension, described in Article V, section 5.4(a)(iii)

and (b), which states:

> **Statutory Pension**: (a) If the Statutory
> Pension begins after the Participant has
> attained his Normal Retirement Age, the
> amount of the monthly Statutory Pension shall
> be equal to (i), (ii) or (iii) below
> multiplied by the ratio of the Participant's
> Pension Credits (but not more than 25) to 25,
> less the amount of the Union Pension Plan
> Benefit....
>
> (iii) For Participant's who terminate
> employment on or after December 9, 1991 –
> $468.75 per month.
>
> (b) If payment of the Statutory Pension
> begins before the Participant attains his
> Normal Retirement Age, the monthly amount
> shall be reduced according to the age of the
> Participant when the Statutory Pension
> commences, in accordance with the Statutory
> Pension tables attached hereto as Exhibit B.

(emphasis added.)  Venturing into the realm of mathematics, the

Court determines that, according to this formula, Plaintiff's

pension must be a fractional percentage of $468.75, based on his

-17-

age – clearly less than the amount promised from the Union
Pension Fund.

Although the Court is not persuaded by Plaintiff's argument
that the 1989 Union Contract is incorporated by reference into
the Hasbro Plan document, reference to the Union Contract reveals
the parties' agreement to limit pension benefits, at least during
the three-year term of the contract.  Moreover, the arguments
made by the Plan Administrators in denying Plaintiff's appeal are
sound: the Union Contract is only enforceable by the Teamsters
Union and Hasbro; the Union Contract presumably reflected the
intent of the parties to it; and, besides, the agreement
terminated twenty years ago, in 1992.  The Court holds the
Defendants' interpretation of the Plan's terms is reasonable.
Plaintiff's argument that his benefits should be calculated as if
he were still a participant in the Union Pension Fund is wishful
thinking, and without merit.

### *The Christmas bonus*

One of the benefits included in the Hasbro Plan is the
Christmas Benefit.  Article V, section 5.6 of the Plan states,

> A participant who retires and who has
> received pension payments for 12 months will
> be eligible to receive a Christmas Benefit in
> December of the calendar year in which he has
> received such 12th monthly pension payment,
> provided he is eligible for pension benefits
> on December 1 of such year.
> The Christmas Benefit will continue to be
> paid each December thereafter for the
> pensioner's lifetime and will thereupon

-18-

> cease.  The amount of the Christmas Benefit
> under this Plan shall be equal to $400.00
> less the amount of the Christmas Benefit
> which is paid to the Pensioner under the
> Union Pension Plan.
>     In the event a Christmas benefit is
> payable to a Pensioner who has less than 15
> Pension Credits, the amount of the Christmas
> Benefit shall not exceed the amount of the
> monthly pension he is receiving.

A Christmas Gift Bonus was also included in the 1989 Union Contract under Article XXV; however, only active employees, or those on layoff status, were eligible for the bonus.

Plaintiff claims that he was entitled to pension benefits as of February 2009, and that, consequently, he should have received a Christmas Benefit in December 2010, as well as in subsequent Decembers.  Defendants argue that Plaintiff cannot properly raise this issue now because he failed to raise it in his earlier appeal.  Based on that argument, Defendants ask that the Court strike Plaintiff's affidavit which states that he receives no Christmas Benefit from the Teamsters Pension Fund.  In addition, Defendants argue that Plaintiff is not eligible for the Christmas Benefit because he has not met the prerequisite: eligibility for pension benefits under the Hasbro Plan.

### *The affidavit*

Defendants have moved to strike Plaintiff's affidavit, which was filed after his appeal was reviewed by the Plan Administrator and which states that he is receiving no Christmas benefit from

the Union Pension Fund.  The Court denies Defendants' motion to strike.  Moreover, the Court holds that Plaintiff's failure to raise the issue of the Christmas Benefit earlier is not fatal to his claim for it now.  The Plan Administrator was responsible for reviewing Plaintiff's eligibility for this benefit when he made his original claim for benefits, and there is no evidence in the record that this review occurred.  Article X of the Hasbro Plan states that the Plan Administrator "shall at all times discharge his duties solely in the interest of Participants and their Beneficiaries, for the exclusive purpose of providing benefits to Participants and their Beneficiaries,..."  When the Plan Administrator responded to Plaintiff's inquiries about his pension benefit, it was incumbent on the Plan Administrator to assess Plaintiff's eligibility for the Christmas Benefit.

### *Plaintiff's eligibility*

The Court also finds unconvincing Defendants' argument about Plaintiff's ineligibility for this benefit, because Defendants' documents indicate that Plaintiff is eligible for a pension payment from the Hasbro Plan, but that the payment is fully offset by the payment from the Union Pension Fund.  Hasbro's Statement of Undisputed Facts states in paragraph 12, "On May 19, 2009, Hasbro determined that Plaintiff was eligible for a Statutory Pension Benefit of $468.75 per month under the Hasbro Plan."  Hasbro's Director of Employee Benefits Dianne Silva wrote

-20-

to Jeanne Medeiros of the New England Pension Assistance Project on March 8, 2011, "The pensions are not for separate periods of service.  The Hasbro Plan credits all service (28 years) and then offsets the Union pension based on the service accounted for under the Teamsters Union Plan (17.4 years)."  Administrative Record at 58 (emphasis in original).  In addition, Plaintiff had achieved "Vested Status," according to the terms of the Hasbro Plan, Article II, sections (cc) and (dd).  The Court sees a distinction: it's not that Plaintiff is ineligible for pension payments from the Hasbro Plan; instead, it is the case that the correct mathematical calculation, as set forth by the terms of the Hasbro Plan, results in the payments being generated exclusively by the Union Pension Fund.

As the Court pointed out above, there is no indication in the Administrative Record that the Christmas Benefit was considered one way or another, by Hasbro staff or its independent consultant Watson Wyatt.  Because there is no evidence that the Christmas Benefit was considered by the Plan Administrator and because Plaintiff's affidavit was submitted after the Plan Administrator's review, the Court determines that the best course of action is to remand the issue of the Christmas Benefit to the Plan Administrator for full consideration of Plaintiff's eligibility for this benefit.  See Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 830 (1st Cir. 1997)(remand

-21-

appropriate when there is a factual dispute about the record of an out-of-court decision).  On remand, the Plan Administrator may rely on Plaintiff's affidavit about his Union Pension Fund benefits, or conduct its own investigation.

## Conclusion

For the reasons stated above, the parties' cross motions for summary judgment are each granted in part and denied in part. Defendants' motion for summary judgment on Plaintiff's claim for the recalculation of pension benefits is granted because Plaintiff is receiving the correct amount.  Plaintiff's cross motion for summary judgment on this issue is denied.  The Court refrains from ruling on both parties' motions in connection with the Christmas Benefit, remanding this issue to the Plan Administrator for further review.  Defendants' motion to strike is denied.  No judgment shall enter until all claims are resolved.  The Court retains jurisdiction of this case until it is fully resolved.

It is so ordered.


/s/Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge
October   10, 2012